NOTICE

Decision filed 07/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220692-U

NO. 5-22-0692

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 18-CF-358 |
| | ) | |
| BOBBY ELLET, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the circuit court accepted the defendant's guilty plea only after substantially complying with Rule 402, and the court did not abuse its discretion in denying the defendant's motion to withdraw the guilty plea, and the defendant's public defender strictly complied with Rule 604(d), and where no argument to the contrary would have arguable merit, the defendant's appointed attorney on appeal is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.

¶ 2    The defendant, Bobby Ellet, appeals from a judgment of conviction, which was entered after he pleaded guilty to aggravated discharge of a firearm. He was sentenced to imprisonment for six years, and he continues to serve his sentence. His appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel and a memorandum of law in support of the motion. See *Anders v. California*, 386 U.S. 738 (1967). This court granted

1

the defendant ample opportunity to file a written response to OSAD's motion, or a brief, memorandum, etc., explaining why this appeal has merit, but he has not taken advantage of that opportunity. Having examined OSAD's *Anders* motion and memorandum, along with the entire record on appeal, this court agrees with OSAD that this appeal has no merit. Accordingly, OSAD is granted leave to withdraw as counsel on appeal, and the judgment of conviction, entered by the circuit court of Jackson County, is affirmed.

¶ 3                                              BACKGROUND

¶ 4     In 2018, the defendant was charged with the Class 1 felony of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2018)), plus a related Class 4 felony and Class A misdemeanor.

¶ 5     On August 5, 2019, the parties appeared before the circuit court. The defendant appeared with his private counsel, Thomas Mansfield. The court thoroughly admonished the defendant about the charges against him, the ranges of sentences that he faced, and his right to a trial by jury, etc. The defendant waived his right to a jury trial. He signed a written jury waiver. The court found that the waiver was knowingly and voluntarily made. It accepted the defendant's jury waiver and set the case over for a bench trial.

¶ 6     On January 30, 2020, the parties again appeared before the circuit court. Defense counsel Mansfield and the assistant state's attorney informed the court that the defendant would plead guilty to aggravated discharge of a firearm, while the other two counts would be dismissed, and the cause would be set for a sentencing hearing. With a series of questions, the court asked the defendant about the various aspects of the plea agreement, and the defendant indicated his understanding. The court addressed the defendant, admonishing him about the charge that he faced, aggravated discharge of a firearm, and admonishing him that the charge was punishable by

2

imprisonment for 4 to 15 years, at 85%, and mandatory supervised release (MSR) for 2 years, or by a sentence of probation for 48 months; in addition to the sentence of imprisonment of probation, a fine of up to $25,000 was possible. The defendant indicated that he understood the charge and the potential range of punishments. Then, the court admonished the defendant about the presumption of innocence, the State's burden to prove him guilty at a trial, and his rights at trial, including the right to confront and cross-examine witnesses, the right to present a defense, the right to call witnesses on his own behalf, and the right to remain silent, and the defendant indicated his understanding of all that. Also, the defendant indicated his understanding that by pleading guilty, he would be giving up all of those rights, and there would be no trial. The court asked the defendant whether anyone had forced, threatened, or coerced him into pleading guilty, and he answered in the negative. The court asked, "Is this your decision to make?" and the defendant answered, "Yes, sir." The defendant then confirmed that he had signed a written plea of guilty (which is included in the record on appeal), and that he understood it and did not have any questions about it, and that nobody had forced him to sign it. The defendant indicated that he did not have any questions for the court. The State provided a factual basis for the plea, stating that on August 30, 2018, at 6:10 a.m., the defendant had shot at Clinton Fowler with a gun, shattering a window on Fowler's vehicle. Defense counsel Mansfield stipulated to the factual basis. The court found that a factual basis existed, that "[n]obody forced, threatened or coerced" the defendant into accepting the plea agreement, and that his plea was knowing and voluntary. The court accepted the guilty plea. It also ordered the probation department to prepare a presentence investigation report (PSI). The two other charges were dismissed.

¶ 7 On July 31, 2020, the parties appeared for a sentencing hearing. Neither side presented witnesses or other evidence. Clinton Fowler, the complainant, neither appeared in court nor

3

submitted a victim impact statement. Arguments and recommendations were presented. The State recommended imprisonment for a term of 11 years. Defense counsel Mansfield recommended probation for a period of four years, or if the court favored imprisonment, a term of four years. In a statement in allocution, the defendant stated that he had "apologized" to the complainant, whom he called "Clint" and described as a "lifetime" friend. "I let anger get the best of me that day," he explained. The court sentenced the defendant to imprisonment for 6½ years, to be served at 85%, and to be followed by MSR for 2 years. The court then admonished the defendant about a motion to reconsider sentence, a motion to withdraw guilty plea, and an appeal from the judgment of conviction, and the defendant indicated his understanding.

¶ 8       On August 28, 2020, the defendant filed, through defense counsel Mansfield, a motion to reconsider sentence. He claimed that the court had failed to properly consider various factors in sentencing. On that same date, Mansfield filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 9       On September 9, 2020, the defendant filed a *pro se* motion to withdraw guilty plea. He alleged that he was "under the influence of drugs" when he entered his guilty plea, and that his counsel told him that he "would receive probation" if he pleaded guilty.

¶ 10      On December 2, 2020, the parties appeared in court, and the judge announced a hearing on the defendant's motion to reconsider sentence. (Neither the judge nor anybody else mentioned the *pro se* motion to withdraw guilty plea, which had been filed on September 9, 2020.) No witnesses were called at the hearing. Defense counsel Mansfield argued that the sentence was excessive; the State argued that it was not. The court denied the motion to reconsider sentence.

¶ 11      On December 17, 2020, the defendant filed a notice of appeal, thus perfecting the appeal in No. 5-20-0415. It was the defendant's first appeal in this case.

¶ 12    In that appeal, the defendant filed a motion for summary relief. This court granted the motion, finding that Mansfield's certificate failed to strictly comply with Rule 604(d). On that basis, this court vacated the circuit court's order denying the defendant's motion to reconsider sentence and remanded the cause for "(1) the filing of a proper Rule 604(d) certificate, (2) the filing of a new postplea motion if defendant so wishes or if counsel concludes that a new motion is necessary, and (3) a hearing on any new motion." *People v. Ellet*, No. 5-20-0415 (2021), ¶ 5 (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 13    Upon remand, the circuit court appointed the public defender to represent the defendant. Attorney Mansfield withdrew.

¶ 14    On July 27, 2022, the defendant, by his public defender, filed (1) a motion to withdraw guilty plea and (2) a motion to reconsider sentence. In the former motion, the defendant claimed that the circuit court did not substantially comply with Illinois Supreme Court Rule 604(d), and that his plea counsel (Mansfield) promised that he would be sentenced to probation if he pleaded guilty. In the latter motion, he claimed that his sentence was excessive, for a variety of reasons, and that his sentencing counsel (Mansfield) was ineffective.

¶ 15    Also on that date, the public defender filed a Rule 604(d) certificate, wherein she certified that (1) she had consulted with the defendant "in person, by mail, by phone, or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence"; (2) she had "examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing"; and (3) she had "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 16    On September 27, 2022, the parties appeared in court, and the judge called a hearing on the defendant's motion to withdraw guilty plea and on his motion to reconsider sentence. The

public defender called just one witness at the hearing—the defendant. He testified that he could not recall what happened on January 30, 2020, due to his being "under the influence" of methamphetamine, marijuana, and alcohol on that date. Drug and alcohol use was a regular part of his life during the "couple of years" that he was out on bond in this case. During that time, he was living in a camper, and he "lost [his] whole family and everything." The defendant did not mention to anyone that he was under the influence of drugs and alcohol on his plea date. He remembered speaking with his attorney, Mansfield, prior to pleading guilty, but could not remember what they talked about. He could not specifically remember the judge asking him questions on the day of the plea. He remembered his sentencing date—July 31, 2020—because it was his mother's birthday. Leading up to the sentencing date, the defendant was "under the understanding that [he] was going to get probation," for "that's what [he] and [his] attorney had discussed." The defendant could not remember the exact date(s) of his conversation(s) with attorney Mansfield. Since his imprisonment began, the defendant had earned several certificates, including one for completion of "fatherhood studies," but he did not receive any time off his sentence for those attainments. He also worked, essentially full-time, at the "maintenance shop." On cross-examination by the State, the defendant clarified that from the time he first hired attorney Mansfield and paid him money, Mansfield told him that he would receive probation. "He thought that's what I would get," the defendant said. "That's what I was told." (The defendant never testified that Mansfield had "promised" him a sentence of probation.)

¶ 17    The State called attorney Mansfield to testify at the hearing. According to Mansfield, he had been practicing criminal law for 44 years. He never promised the defendant that he would receive probation. He told the defendant that he could be sentenced to imprisonment for 4 to 15 years, or to probation for 4 years. The defendant had no prior felony convictions, as Mansfield

6

recalled, and he thought that this fact, combined with his acceptance of responsibility for his actions, could cause the court to "lean toward probation." Mansfield never "guarantee[d] him probation." He told him that "it could go either way." The defendant, Mansfield thought, seemed to understand that probation was just a possibility, and not guaranteed. As for the defendant's behavior on the day of sentencing, Mansfield did not notice anything unusual about it. In Mansfield's estimation, the defendant did not seem intoxicated or "high," whether on the date of sentencing or on the date of the guilty plea.

¶ 18 During argument, the public defender called the court's attention to the plea-hearing transcript, and called attention to the fact that the judge at the plea hearing had not asked the defendant about promises made to him in connection with the plea of guilty. The circuit court denied the motion to withdraw guilty plea. However, it granted the motion to reconsider sentence, reducing the sentence from 6½ years to 6 years, due to the defendant's completion of classes.

¶ 19 The defendant filed a timely notice of appeal, thus perfecting the instant appeal. At the defendant's request, the circuit court appointed OSAD to represent him on appeal.

¶ 20                                    ANALYSIS

¶ 21 This appeal is from a judgment of conviction. As previously noted, the defendant's attorney on appeal, OSAD, has concluded that this appeal lacks merit, and it has filed an *Anders* motion to withdraw as counsel, along with a brief in support of that motion. The defendant has not filed any type of document in response. OSAD's supporting brief presents three potential issues on appeal. This court agrees with OSAD that those issues are meritless.

¶ 22 The first potential issue raised by OSAD in its *Anders* brief is whether the circuit court substantially complied with Illinois Supreme Court Rule 402 (eff. July 1, 2012) at the time it accepted the defendant's guilty plea. Rule 402 itself states that "substantial compliance" with the

rule is required. Whether the court substantially complied with Rule 402 is a legal question that is reviewed *de novo*. *People v. Hall*, 198 Ill. 2d 173, 177 (2001).

¶ 23 In deciding this issue, the pertinent sections of Rule 402 are sections (a) through (c). Under section (a) of Rule 402, a court cannot accept a guilty plea "without first, by addressing the defendant personally in open court," informing him of, and determining that he understands, (1) the nature of the charge against him, (2) the minimum and maximum sentence he faces, including the penalty he faces due to prior convictions or consecutive sentences, (3) that the defendant has a right to persist in his plea of not guilty or to plead guilty, and (4) that if he pleads guilty, there will not be a trial of any kind, so that by pleading guilty he waives the right to a jury trial and the right to be confronted with the witnesses against him. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). This court's summary of the defendant's guilty-plea hearing, *supra*, shows that the circuit court informed the defendant, and determined that he understood, all of the various items mentioned in Rule 402(a)—the nature of the charge, the possible penalties, etc. The circuit court substantially complied with section (a).

¶ 24 The court also determined that there was a factual basis for the plea, after hearing the assistant state's attorney recite one. The court thereby substantially complied with the requirement of section (c) of Rule 402. See Ill. S. Ct. R. 402(c) (eff. July 1, 2012) ("The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea.").

¶ 25 Determining whether the circuit court substantially complied with section (b) of Rule 402 requires a bit more examination. Rule 402(b) reads as follows: "The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the

8

defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea." Ill. S. Ct. R. 402(b) (eff. July 1, 2012).

¶ 26    Much of Rule 402(b) was explicityly adhered to. As the rule directs, the defendant's plea agreement was stated in open court, and its terms were confirmed by the defendant personally. Furthermore, the court specifically asked the defendant whether anyone had forced or threatened him into pleading guilty; he responded in the negative, and the court specifically found that no force or threats were involved. However, there was one aspect of Rule 402(b) that the circuit court did not explicitly adhere to—the portion that concerns questioning the defendant, and making a determination, as to whether the plea was obtained through promises apart from the plea agreement. The court did not specifically ask the defendant about promises, or make any specific determination about promises.

¶ 27    Nevertheless, the court "substantially complied" with the rule, which is all that the rule itself requires. First of all, the defendant signed a written plea of guilty that specified, "No promises have been made to me concerning a specific sentence." The defendant acknowledged signing and understanding that document. (The defendant claimed in his postplea motion that his plea counsel had promised him that if he pleaded guilty, the court would impose a sentence of probation.) Second, the court asked the defendant about each of the various aspects of the plea agreement, which included that there would be a sentencing hearing and the possibility of imprisonment, and the defendant indicated his understanding of all these. Finally, the court specifically found that the defendant's plea was knowing and voluntary. Although the court did not strictly comply with Rule 402(b), it did substantially comply with it, and that is all that the rule requires.

9

¶ 28    The second potential issue raised by OSAD in its *Anders* brief is whether the circuit court abused is discretion when it denied the defendant's motion to withdraw his guilty plea, because the plea was not knowing and voluntary. "Generally, the decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion." *People v. Hughes*, 2012 IL 112817, ¶ 32. An abuse of discretion occurs when the circuit court's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the view adopted by the court. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). "A defendant has no absolute right to withdraw his guilty plea. [Citation.] Rather, he must show a manifest injustice under the facts involved. [Citation.] Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial. [Citation.]" *Hughes*, 2012 IL 112817, ¶ 32.

¶ 29    In the defendant's July 2022 motion to withdraw guilty plea, the defendant presented two grounds for allowing withdrawal: (1) the circuit court did not substantially comply with Rule 604(d), and (2) plea counsel had promised that the court would sentence him to probation if he pleaded guilty. For the reasons stated *supra*, the circuit court, in fact, did substantially comply with Rule 604(d). As for the second of the two grounds, the defendant testified at the September 2022 hearing on the defendant's motion to withdraw guilty plea that his attorney told him from the start that he would receive probation if he pleaded guilty. "He thought that's what I would get," the defendant testified. "That's what I was told." However, at that same September 2022 hearing, plea counsel testified that he never promised the defendant probation. Counsel stated that he made clear to the defendant, on multiple occasions, that between a sentence of imprisonment and a sentence of probation, "it could go either way." Counsel thought that the defendant seemed to

10

understand that probation was just a possibility, not a guarantee. The court was free to believe plea counsel's testimony as opposed to the defendant's. See *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 43 ("For hearings on motions to withdraw guilty pleas, *** the determination of witness credibility rests with the trier of fact."). This is especially true where plea counsel's testimony was in sync with the transcript of the guilty-plea hearing. At the plea of guilty, the court made it abundantly clear that after a sentencing hearing, the defendant could be sentenced either to prison or to probation, depending on the evidence adduced at sentencing. As the transcript shows, the defendant understood all of this.

¶ 30    The third (and final) issue raised by OSAD is whether plea counsel's certificate strictly complied with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). In order to appeal from a judgment of conviction, a defendant who has pleaded guilty must file, within 30 days of his sentencing, a motion to withdraw guilty plea or a motion to reconsider sentence. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). In addition, the defendant's attorney must file a certificate of compliance with Rule 604(d):

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." *Id.*

The certificate must strictly comply with Rule 604(d). *People v. Janes*, 158 Ill. 2d 27, 33 (1994). Counsel's compliance with Rule 604(d) is reviewed *de novo*. *People v. Easton*, 2018 IL 122187, ¶ 25.

¶ 31     In this case, in July 2022, the defendant's public defender filed a certificate, described *supra*, that largely tracked the language of Rule 604(d).  Strict compliance was met here.  Also, there is no reason to doubt or to question that the public defender fulfilled her obligations to the defendant under Rule 604(d).  Nothing in the record even begins to undermine the certificate of compliance.  *People v. Herrera*, 2012 IL App (2d) 110009, ¶ 13 (unless the record "undermines" the certificate, a court of review will consider only the certificate when determining whether an attorney complied with Rule 604(d)).

¶ 32                                      CONCLUSION

¶ 33     This court's complete and thorough examination of the record has not revealed any issue of arguable merit in this appeal.  Certainly, none of the three potential issues identified by OSAD in its *Anders* brief has any arguable merit.  Accordingly, OSAD's *Anders* motion for leave to withdraw is granted, and the circuit court's judgment of conviction is affirmed.


¶ 34     Motion granted; judgment affirmed.